Good morning, Your Honors. Christopher Johns on behalf of the Defendant Appellant Martin Cardenas. I'll go for five minutes, Your Honor. I want to reserve five so that I can respond. First of all, Your Honor, I did submit a 28-J letter that cited the Ameline decision, which was filed last week, last Thursday on the 10th, and the next day on the 11th, Chief Judge Schroeder entered an order noting that there would be a case, and so you made a specific instruction we're not to refer to it. The heart of this appeal, Your Honor, lies in the district court's determination that Mr. Cardenas did not satisfy the fifth requirement for the safety valve relief. That's the tell-all-you-can-tell requirement that, as this circuit has phrased it in the U.S. v. Sherpa and U.S. v. Sherpa, the district court's determination  Now, based on the district court's statement of reasons for imposing the sentence in which he denied the safety valve relief, I submit that Mr. Cardenas did satisfy the fifth requirement for safety valve relief. The district court concluded that because Mr. Cardenas made misstatements in the first two debriefings, that the complete disclosure in the third debriefing was insufficient to satisfy the tell-all-you-can-tell requirement, and that's contrary to the Federal law that we've cited. And the Court was, of course, required to state its reasons why it was denying the safety valve relief. It did so. It did so predicated on misstatements in the first two debriefings, notwithstanding the full disclosure in the third debriefing. That involves an error of law. He said that his wife didn't participate. What about the rest of his relatives? That issue didn't come up, Your Honor. Well, he was asked about the family. Usually you understand family more than your wife. Well, in the – that's correct, Your Honor. He said that what the defense lawyer said, he was inquired of the question that they asked about his family. He said, was your wife involved, and he said no. No, the first time he's asked about his family, he said I can't answer that. That's correct, Your Honor, but that goes to the – in the second debriefing and when there was the declaration. That's before we get to the third debriefing. But does he ever tell you about his relatives? Well, what's in the record is what the defense counsel said to the Court in sentencing when he said he was asked about his wife and he said no. That's the only reference to family. Well, that's the first reference where he does not answer. That's correct, Your Honor. Though he doesn't improve on it. Well, he did improve on it, Your Honor. What? Because in the third debriefing he was asked, was your wife involved, and he said no. That's what's in the record of the sentencing hearing in November of 2001. And that's all that is in the record in November of 2001 in the final sentencing hearing. And the Court didn't rely on that as a basis to deny the safety valve relief. What the Court said was you made a misstatement in the first debriefing, in the second debriefing. My reason is that notwithstanding you gave a full disclosure in the third debriefing, you don't qualify. And what this Court is complying with. Well, you're pressing Judge Ware's language rather hard when you think he says he told all he knew. He expresses great skepticism with this amount of drugs and money involved that there's so little information to be provided. Does he give the address of his supplier? He gave a location, Your Honor. It was by a bar. It was in a volleyball court behind a bar. That's in the record. He gave a location. He gave a full description. He gave the name. A volleyball court? Correct. Behind a bar. And that was identified. And that's what is in the record. So there was a location. And what was the monetary size of the transactions? I think there were three. There were three transactions. Only three, he says. Is that right? There were three transactions that were identified, Your Honor. Does he provide any more information about them? I think we'll hear about that. Does he say all I've done is three times? That was in the declaration. He said he was involved in other cases, other matters. He acknowledged that in the declaration. And does he supply any information about them? The record is silent on that, Your Honor. Well, the judge was quite skeptical. Well, skepticism aside, Your Honor, there is. Well, he's the judge dealing with the case. You can't put it aside. I think what the statutory requirement is is for the court to set forth its reasons so that when we're here having meetings. Well, he says essentially I don't believe you. That's a reason. Here's what he says. It is true. This is at Excerpt to Record 92, line 4. It is true that the safety valve provisions provide that there has to be this clear debriefing prior to imposition of sentencing. But when a defendant decides to make a debriefing and then mistakes the background and then does it again and mistakes it, and then finally decides to say as much as he knows, credibility is a legitimate question that can be raised with respect to the safety valve. And for that reason, it appears to the court, it must find that Mr. Cardenas is not eligible based on his own conduct. But that is not a ring and declaration that he has told all he knows. It's just as though Judge Ware, in effect, is saying, well, he appears to be saying all he knows, but I don't believe him. That's not the word he uses, Your Honor. He says then finally decides to say as much as he knows. But he doesn't say he did do it. He just says, well, we've given him a third chance and he's apparently going to do it. And then he says credibility is an issue. Credibility was an issue based on the first two debriefings when he made misstatements. Well, it's still an issue. That's a correct assessment there. But that doesn't detract from the fact that the Court made a specific factual finding that in the third debriefing finally decides to say as much as he knows. I don't think that's a factual finding. That's your rather strong reading of it. I can only submit what is in the record, Your Honor, and what the judge is required to do. Well, you add your own twin to spin. I cited a number of decisions, and in the 28J letter I did cite the Jeffers decision for the basic proposition that if you make misstatements in priority briefings, what you're required to do in that final debriefing, if you say as much as you know, you satisfy the requirement, you're entitled to relief. And I just have two and a half, two minutes or about three minutes left. Thank you, counsel. Here from the government. Good morning. May it please the Court. I'm Amber Rosen representing the United States in this matter. I think this case can be decided on an even easier, more fundamental issue than whether the district court's finding regarding the safety valve was clearly erroneous. And that is that the defendant had a full appellate waiver, which he agreed to. The government — I'm sorry. The defendant makes three claims as to why that waiver in which he waived any right to appeal his sentence should be held invalid. And yet none of those have merit. The first is that the waiver wasn't knowing or voluntary based on the Supreme Court subsequent decision he cites blatantly but presumably now under Booker. But the defendant's waiver was knowing and voluntary because at the time that he entered the plea, he knew he had a right to appeal and he knew he was giving up that right. And that renders it knowing and voluntary. And the defendant does not have a right to know any — all the bases on which he might be giving up his right. It's enough that he knows he's giving up the possibility of appeal, even if he doesn't know the exact nature of the appeal. And that's what this Court has held in Navarro-Battello. That's what this Court has held in the Johnson case, which also related to a claim that a subsequent change in the law vitiated a knowing plea. All of the circuits who have decided this issue post-Booker have rejected the claims the defendant is making. The First Circuit in Salen held that and even said it was frivolous because the defendant was sentenced as he was expected to be. And the Eighth Circuit in Parsons also denied such a claim, relying on a Supreme Court case in which the Supreme Court has held. Pleas made in light of then-applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. Moreover, of course, Booker isn't even applicable in this case. Booker would give the defendant a right to be sentenced under an advisory guideline scheme, but the defendant wasn't sentenced under the guidelines. He was sentenced under the statutory mandatory minimum. The defendant also claims that the government breached the plea agreement. The agreement states in paragraph 14, the government agrees to recommend the guidelines calculation set out above if the court determined that the mandatory minimum prison sentence does not apply. Well, the court found that the mandatory prison sentence did apply, so the government's obligation to recommend the guideline range was not triggered. The defendant's argument ignores the fact that the parties had left it for the court to be the arbiter of whether he qualified for the safety valve, and he bore and both sides bore the risk of the court's decision if it went against them. The defendant raises one other claim to vitiate the waiver, which is that the sentence was illegal, but we'll submit it on the briefs. I have nothing to add to that. He doesn't even make a claim of illegality, as that's been defined by this Court. So on this basis, the government submits that the court should dismiss the appeal for lack of jurisdiction because there's nothing to invalidate defendant's right to sentence, which is what he's appealing now, and we'd ask that the appeal be dismissed. To the extent that the court wants to decide this case on the merits or believes that that's appropriate, the district court's finding that defendant did not qualify for the safety valve was not clearly erroneous. Well, it does seem to suggest that he can count against him the fact that he took him three sessions before he came clean, and the law seems fairly clear. It's the question of whether or not he's fully disclosed by the time of hearing, not whether it took three or four sessions. The idea is he's supposed to do it. So what's the response to that? It's true that if a defendant comes clean, then he cannot be disqualified from consideration of the safety valve. But it's also true that a court is entitled to look at that in making an overall determination as to a defendant's credibility. It's still not irrelevant that he may not have been initially forthcoming. But I think even more importantly is the fact that the court did not simply rely on the fact that he didn't give up his source in the first two debriefings. The Court's findings were broader than that. The Court cited to the fact that the large amounts of drugs and quantities involved, and overall the defendant sold $25,000 worth of heroin and cocaine to the undercover agent within a month's time. The Court said the large quantities involved raised doubt as to the defendant's credibility with respect to the nature of activities. In other words, the Court found that those amounts were not consistent with the defendant's story, that he had met the source one time and was immediately supplied, that he didn't know where the source lived or how to find him. The Court also relied on the defendant's inconsistencies. The defendant didn't simply, with respect to his prior drug dealing, for example, it wasn't simply that the court initially, that the defendant initially said, oh, I didn't do them and then came clean and said I did. The defendant initially said, I was never involved in any other deals except for the three that I was caught doing. Then he signed a written declaration saying, oh, I have done other drug deals. And then at the third debriefing and at the sentencing in response to the Court's direct questioning, he went back on that statement and said, I've never been involved in any deals except for the three for which I've been charged. So on that alone, the Court denied the safety valve. I mean, how can you find the defendant gave all the information he knew and truthfully did so when you don't even know what the truth is about his involvement in prior drug dealing? He was continuing to go back and forth on that. So the Court relied on those inconsistencies. And then the Court also cited to the fact that he had been grudging in his disclosures. And while the grudginess may not disqualify him, the Court can find that he's still not being completely forthcoming, that he's still not telling all he knows, and base that in part on his demonstrated record of not having been forthcoming in the past. So I think you need to look at the full context and the full findings of the district court. The defendant wants to single out the one statement by the court, but the Court's statements, the Court relied on all three of those factors and not simply the failure to disclose early. Kennedy, to refresh my recollection, did the government argue that he had not been fully forthcoming? Yes. The government had argued that. The government, in the sentencing brief, for example, claimed that his story about the full extent of his activities was not credible in light of the three large drug deals that he did. And that his story, that he met his source in a bar, that the first time he met him, he immediately agreed to supply him, that he couldn't give any additional information that had been provided as to locate him, was simply not consistent with the activities with which he was been caught engaging in. Well, to the extent there was a question, why shouldn't the district court have held an evidentiary hearing? Herein, I don't think there was any reason to hold an evidentiary hearing. And the reason is, one, as we stated, the failure, the defendant's inconsistent statements on his prior drug dealing alone would have been a sufficient basis for the Court to deny it. And for that, the Court had clear evidence. He had the signed declaration where the Court said, where the defendant said he did other deals, and then he asked the defendant point blank at the sentencing, is that what you're maintaining? And the defendant said, no, I've never done any others. But in addition to that, there really is no evidence. Kennedy, let me get to the chase of my concern, is that it seems to me that we're drawing a lot of nuances, I mean, foot-dragging the quantity of the transactions inconsistent with what he said or admitted to, what he gave to the government. When you're dealing with inferences and drawing inferences from the facts, isn't that precisely the kind of circumstance in which a district court ought to hold an evidentiary hearing? And so the defendant can have an opportunity to rebut the inferences if that's what the basis of the decision? I don't think so in this particular case. For one thing, there really isn't any dispute about the underlying facts of what he disclosed. In other words, the government had made statements both in its sentencing memorandum and at the sentencing about the kinds of facts that the defendant had not disclosed. Like, he didn't disclose any further information about how to locate his source. He hadn't he didn't he, you know, his claim that he didn't know how to contact him. And the defendant at the sentencing didn't dispute that. And the defendant articulated facts that he had disclosed, that his wife wasn't involved, that he had given a description of the source and that he had given a description of the vehicles. And the government didn't dispute that. So there seemed no to be – there seemed not to be any dispute about what the defendant had disclosed, and the question was just was he credible in that that was all the information that he provided. So I don't think the Court needs to hold any evidentiary hearing to make that credibility determination. It had defendant's inconsistent statements about his drug dealing. It had the fact that the defendant had been forthcoming only right before the sentencing. In other words, the Court knew, for example, that, you know, the day before the scheduled first sentencing, that was the day the defendant disclosed in his declaration the name of his source. And then at that point, the defendant wasn't – was refusing to talk about his family at all. Then the Court at that aborted sentencing said, well, you know, you're not talking about your family at all, and indicated that that was part of its basis for denying the safety valve at that time. Well, then, of course, at the third debriefing, apparently, he did, you know, what did answer questions about his wife's involvement. So, I mean, the Court could look at that and say, look, the defendant's only giving information as he sees it may be necessary to get the safety valve, and I'm going to hold that against him in finding that I still think he's not telling all that he knows. So I really don't think that an evidentiary hearing would have done anything to further that finding, because the actual facts of what he had disputed, the parties seemed to be in agreement about, and it was really just how to interpret those facts. Roberts. Thank you, counsel. Thank you. Just briefly, Your Honor, I only have a few minutes. I'll rely on the brief with regard to the waiver of appeal. There was a breach of the plea agreement. Well, what's your answer on that? On which one, Your Honor? On the waiver. On the waiver? The government breached the plea agreement. The – this is a contract that the government drafted. It's construed against them. And paragraphs 12, 13, and 14 of the plea agreement clearly indicate that they're going to support the application of the safety valve. Obviously, the judge has to find it. And the judge has to find it, then the defendant doesn't get it. So? But they said that they would support it, and they didn't. If the judge finds it. They don't say they're going to persuade the judge. No, but they indicate that they're going to support it, and, in effect, by not supporting it, they repudiate it. Now, wait a minute. The contract is to be read, what it says. They will support it if the court finds it. That's correct, Your Honor. All right. They don't say they're going to support it. They say the government agrees to recommend the guideline calculation. This is in paragraph 14, Your Honor. The government agrees to recommend the guideline calculations set out above. And that's reference to 27. If the court determines that the mandatory minimum does not apply. All right. So they require a determination by Judge Weyer. Did he make that determination? No, he didn't, Your Honor. All right. So how do they breach it? Because they didn't support it. They were going to give all the information to the court to have an appropriate determination made. And what they gave to the court, they said he breached, and the basis was that they did not give, that they made misstatements in the first two debriefings. That's the answer to that one. The other one is that the sentence is illegal. I mean, just as a matter of law. If he satisfied the safety valve requirement, this is a mandatory provision, then an illegal sentence has been imposed because Congress specifically. That's in the brief? That's in the brief, Your Honor. So there would be an illegal sentence here under 3553F, because there's a congressional mandate that you do not get a mandatory minimum. If you satisfy the safety valve. That's an exception to any appeal waiver. And I cite the, I think it's the Baramka case. There's the Gonzales case. There's several cases that I've cited for that proposition. If I could just answer one thing, one of your honors asked, what was the government's position? Here is what the government's position was at the sentencing hearing. What the United States asserts was untruthful was Mr. Cardenas' story from the first two debriefings, that he had never sold drugs before in his life, that he had no idea of the actual name of the source, and had no information about how to find him or contact him. And as you know from the declaration, Mr. Cardenas came up with a name or told us, but that did not render his story in the slightest bit more credible. It's the same thing that the district judge did. They're relying on misstatements in the first two debriefings as the basis to deny safety valve. That's irrelevant. What's at issue is what happened in the final debriefing. And just one final comment. There was a recantation with regard to prior drug dealing, but this circuit has already held that recantation, as a matter of law, does not disqualify him from safety valve relief. Thank you, Counsel. The case, as heard, will be submitted.
judges: Noonan, Thomas, Fisher